## MODEL BRASSIERE CO., Inc., v. BROMLEY-SHEPARD CO., Inc.

### No. 2648.

Court of Customs and Patent Appeals.
April 29, 1931.

HATFIELD and LENROOT, Associate Judges, dissenting.

Briesen & Schrenk, of New York City (Louis Alexander, of New York City, and Conway P. Coe, of Washington, D. C., of counsel), for appellant.

Geo. P. Kimmel, of Washington, D. C. (Samuel Bogorad, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal in a trade-mark cancellation proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences sustaining appellee's application for the cancellation of the registration of appellant's trade-mark "Ensemble" for use on "garter-brassieres."

Appellant's trade-mark, No. 197,197, was registered April 14, 1925, on an application filed December 26, 1924.

In its petition for cancellation, appellee alleged that it was engaged in the manufacture and sale of ladies' "undergarments and garments" which "might be designated as garter-brassieres"; that in the year 1924, it adopted and began the use of the word "Ensemble," not as a trade-mark, but as a term descriptive of a certain type or style of combination undergarment for ladies, comprising what "might be termed as a brassiere, chemise, and step-in"; that it has continuously used said name on, and in advertising, its goods from the year 1924 to the present time; that the term "Ensemble" is descriptive; that immediately after appellant had registered the word "Ensemble" as its trademark, it challenged the right of appellee to use that term to describe its combination garment; that, on or about October 6, 1926, appellant filed a suit against appellee in the United States District Court, Southern District, New York, and alleged in its bill of complaint that appellee was guilty of trademark infringement by reason of its use of the word "Ensemble"; that, on December 7, 1926, appellee's motion to dismiss the bill of complaint was denied by the court; that on February 18, 1927, the court granted appellee's motion for the filing of a bill of particulars by appellant as to the charge of unfair competition; that counsel for appellant, although frequently requested to do so, never filed a bill of particulars, but, on October 7, 1927, dismissed the bill of complaint without prejudice; and that appellee deemed itself injured by the registration of the word "Ensemble" to appellant.

In its answer, appellant admitted that it had requested appellee to discontinue using the involved trade-mark in connection with merchandise like that covered by appellant's registration; that appellant filed suit against appellee on or about October 6, 1926; that appellee filed a motion to dismiss the suit; that said motion was heard on December 7, 1926, and denied by the court; and that the bill of complaint was withdrawn without prejudice and without cost to either party, in accordance with a stipulation entered into by counsel for the parties and filed in the District Court on October 24, 1927. All other allegations contained in appellee's application were denied by appellant. It was alleged in the answer that, at the request of appellant, appellee agreed to discontinue the

use of the word "Ensemble" on goods similar to those covered by appellant's registration; and that, when appellee subsequently made some further use of the word "Ensemble" in violation of its agreement, appellee apologized to appellant and claimed that such use was inadvertent and would not be repeated.

Appellant submitted no testimony.

The only testimony submitted by appellee is that of its counsel of record, George P. Kimmel, who testified that he was attorney for appellee, and that the word "Ensemble" was commonly used by merchants and others to describe combination garments prior to, and since, appellant first used "Ensemble" as a trade-mark. Thereupon, the witness identified and introduced in evidence copies of a newspaper, the Evening Star, Washington, D. C., dated, respectively, September 14, 16, 17, 20, 22, 23, and 26, October 7, 10, 13, 14, 17, 18, and 26, and November 4, 6, 7, 13, and 18, 1924, eight copies of "Vogue" magazine published during various months of the year 1924, and a copy of the Corset and Underwear Review, dated January, 1925, in each of which appeared an advertisement by others showing the use of the word "Ensemble" to describe various ladies' garments. The witness then testified as follows:

"Q. 9. What name has Petitioner used on any of its garments? A. Snuggleband-Ensemble. * * *

"Q. 10. Have you a specimen of Petitioner's garment? A. I have and hand you a specimen of the same the label which was on the same having been removed by me."

Thereupon, the garment identified by the witness was offered in evidence as Appellee's Exhibit No. 7.

The witness then testified in detail regarding the suit filed by appellant against appellee in the District Court, Southern District, New York, which, in a general way, substantiated the allegations in regard thereto contained in appellee's petition for cancellation. Certain correspondence between counsel for the parties, relating to the suit in the District Court, together with certain affidavits filed in that case with appellee's motion to dismiss, were offered in evidence. The witness then testified as follows:

"Q. 12. Are there any other statements you wish to make in connection with this case and if so, please make them. A. I find among my papers a folder published by Bromley-Shepard Company, Inc. which on the fifth page shows the manner of use for advertising of the word "Ensemble" by Petitioner. Also a clipping from the Corset and Underwear Review on which the date does not appear, but which shows the same thing as shown in the folder."

The documents referred to in the answer of the witness were introduced in evidence as Appellee's Exhibits Nos. 9 and 10. Neither of these exhibits shows the date of its publication or use.

Counsel for appellant objected to all of the testimony of the witness on the ground that it was hearsay, and that the witness had not shown any knowledge of the facts to which he directed his testimony. Objection was also made to each of the exhibits introduced in evidence.

Upon this record, the Examiner of Interferences sustained the petition for cancellation.

Upon appeal, the commissioner, after referring to the allegations contained in appellee's petition for cancellation, said:

"This is clearly such a statement of facts from which, if true, it may reasonably be inferred that the petitioner will be damaged unless the mark is cancelled.

"The petitioner having established legal standing in the cancellation proceeding it may properly challenge the validity of the registrant's registration."

He held that, as applied to garter-brassieres, the word "Ensemble" was descriptive; that it had been used by others in connection with ladies' garments before its adoption and use by appellant; and that appellant was not entitled to the exclusive use of the word as a trade-mark; and, accordingly, affirmed the decision of the Examiner of Interferences.

In his decision, the commissioner cited the case of Andrews Radio Co. v. Timmons Radio Products Corp., 345 O. G. 798, 1926 C. D. 39, as authority for the proposition that one who seeks cancellation of a registration of a descriptive mark need not establish that he was using it at the time his application was filed; but that, on the contrary, it is sufficient that he "shall have used said mark in describing the article which he manufactures or owns."

Section 13 of the Trade-Mark Act of 1905 (15 USCA § 93), under authority of which appellee filed its petition for cancellation, reads, in part, as follows: "Whenever any person *shall deem himself injured* by the registration of a trade-mark in the Patent Office he may at any time apply to the Commission-

er of Patents to cancel the registration thereof. The commissioner shall refer such application to the examiner in charge of interferences, who is empowered to hear and determine this question and who shall give notice thereof to the registrant. If it appear after a hearing before the examiner that the registrant was not entitled to the use of the mark at the date of his application for registration thereof, or that the mark is not used by the registrant, or has been abandoned, and the examiner shall so decide, the commissioner shall cancel the registration. * * *" (Italics ours.)

In this court appellant makes two contentions:

First, that the commissioner erred in holding that the mark "Ensemble" is descriptive of the goods specified in the registration; that the registered mark is prima facie valid and that the record fails to show that it is invalid by reason of being descriptive.

Second, that the petitioner "has failed to establish by proper evidence that *it was using at the time of the filing of the petition* for cancellation, the word Ensemble either descriptively or otherwise for garter brassieres, the goods covered by the registration sought to be cancelled or for merchandise of the same descriptive properties." (Italics ours.)

We agree with the decision of the commissioner that the word "Ensemble," as applied to the merchandise of both parties, is descriptive and is, therefore, not subject to the exclusive ownership and use by any one, and that the same should not have been registered.

"Ensemble" is defined in Webster's New International Dictionary (1925) as follows: "The whole; all the parts taken together. * * *"

The word "Ensemble" clearly describes and is applicable to ladies' underwear which both parties hereto manufacture and sell. The goods are referred to by the commissioner as "a combination undergarment for ladies, comprising what might be termed a brassiere, chemise and step-in."

Section 5 of the Trade-Mark Act (15 USCA § 85) provides that no mark which consists merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods shall be registered. The Supreme Court of the United States, in the "Ruberoid" case, Standard Paint Co. v. Trinidad

Asphalt Mfg. Co., 220 U. S. 446, 453, 31 S. Ct. 456, 457, 55 L. Ed. 536, has declared the settled rule to be that: "* * *. No one can appropriate as a trademark a generic name or one descriptive of an article of trade, its qualities, ingredients, or characteristics, or any sign, word, or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth."

The statute provides a procedure for cancellation of an offending mark of this character, and the sole question remaining for decision is to determine whether or not appellant is right in its second contention that the petitioner has not proven sufficient facts to show that it is a proper party in interest, and that it will be injured by the registration of the mark.

It is clear to us that there is a distinction between the proof required to show the statutory authority to petition for cancellation and the injury or damage which would be resultant from an invalid registration in a case where the petitioner claimed to be the owner of a valid trade-mark, and a case where he disputed the right of ownership in any one In the former it is clear that he should show such facts as would show his ownership and use at the time the petition was filed. In that case it would be important for him to allege and prove that he was making a trade-mark use of the mark at the time of filing the petition, since, if he was not using it at that time, it would be possible that he had abandoned its use altogether.

In respect to this issue, we think it is sufficient, in this kind of case, for the petitioner to allege and show facts sufficient to establish the injury and his statutory right to file the petition. To do this, in our judgment, he is not required to show that he, on the date of filing the petition, was actually using the descriptive term on or in connection with his goods, as he would be required to do if he claimed ownership in a valid mark.

Appellant's fifth paragraph of his answer admits and concedes appellee's use of the term "Ensemble," and reads as follows: "5. Further answering the petition for cancellation registrant alleges as an affirmative defense that petitioner for cancellation upon registrant's request agreed to discontinue using the word Ensemble in violation of registrant's trade mark rights evidenced by the certificate of registration herein sought to be canceled, and that petitioner, when it subsequently made some further use of the word Ensemble in violation of registrant's said

rights apologized to registrant claiming that said use was inadvertent and would not be repeated."

Furthermore, it states that appellee continued to use the word "Ensemble" although it apologized to appellant for doing so and promised that it would not be repeated. Appellant sued appellee for using the word in connection with its goods, and the record shows that appellant was insistent that appellee desist from the use of the same. It now bases its grounds of defense upon the fact that appellee was not using the word at the time it filed the petition. Although no definite dates were given, the testimony is positive that the petitioner used the term "Ensemble" on its goods.

■■ We think the record sufficiently shows that appellee was a proper party in interest to file a petition, and that its allegation and proof show the injury contemplated by the statute.

According to the contention of appellant, in order for appellee to be in a position to cancel the illegally registered mark (which, of course, appellant contends is valid), it was necessary for the appellee to show that it had braved all the dangers of infringement suits and was using the mark at the time it filed the petition.

This contention is entirely plausible, if applied to a valid mark, the ownership and use of which is in question, but, since we conclude, as the commissioner concluded, that the mark is descriptive within the meaning of the statute, appellant's contention that it must be shown that appellee used the descriptive mark on the day it filed its petition is wholly untenable. Words merely descriptive of goods to be sold, not being subject to exclusive appropriation and ownership, do not have to be used in a trade-mark manner in connection with goods in interstate commerce in order to entitle anyone to their use, and one who desires to use the same obviously does not have to assert ownership or facts from which ownership may be determined.

As long as the word "Ensemble" is a registered trade-mark, it is a threat, not only against the party who manufactures and sells merchandise like that of the parties to this suit, but to all who buy of them for the purpose of resale. Its continuance as a registered trade-mark, which mark appellant urges is prima facie legal, thus has the tendency to interfere with and hamper the commerce of the country and the clearly defined rights of tradesmen. See Electro Steel Co. v. Lin-denberg Steel Co., 43 App. D. C. 270, 5 T. M. R. 295.

■ That appellee was not required to show use on the date the petition was filed, and that the record shows injury to appellee, and its right to petition is supported by Andrews Radio Co. v. Timmons Radio Products Corp., supra; Elishewitz v. Leyser Green Co., 47 App. D. C. 193, 8 T. M. R. 34; Hydraulic Press Brick Co. v. Hocking Valley Products Co. (D. C. Sup.) 120 MS. Dec. 196, 7 T. M. R. 155; Electro Steel Co. v. Lindenberg Steel Co., supra. While we are of the opinion that the petitioner was not required to show that he used the term on the date the petition was filed, he is, of course, required to show a statement of facts from which it may be found that he was being injured at that time. He would have no right to complain about the registration of the offending mark if, at the time he filed his petition, he was not being injured by it. Elishewitz v. Leyser Green Co., supra.

In the Andrews Radio Co. Case, supra, it was held that it was sufficient for the appellant to show that he had used the mark in describing the article.

In the Elishewitz Case, supra, the Court of Appeals of the District of Columbia, in an opinion by Mr. Justice Robb, sustained the action of the commissioner in canceling the registration of the mark and said: "* * * The petitioner for cancelation shows injury by the registration, though injury will be presumed to follow the improper registration of any descriptive word."

In Hydraulic Press Brick Co. v. Hocking Valley Products Co., supra, the commissioner, in canceling the descriptive trademark "Rug" for bricks, held: "* * * Use by the petitioner in a descriptive sense is sufficient. ' It is enough that the petitioner may be injured by the claim of exclusive right and in fact the injury is sufficiently established in this instance, the petitioner having been sued in the supreme court of the District of Columbia for infringement."

The case most analogous to the case at bar is Electro Steel Co. v. Lindenberg Steel Co., supra, which affirmed the action of the commissioner in canceling the descriptive trademark "Electro" as applied to steel. The court, in a very well considered opinion by Mr. Justice Shepard, held the word "Electro" to be descriptive and said: "* * * Should registrants be permitted to retain their registration they would be in a position

to prevent others from applying said mark to steel manufactured in the electric furnace, and would be in a position to institute expensive and troublesome litigation, basing their suits upon said registration, and *attacking both the petitioner's purchasing trade, as well as the purchasing public in general,* and they would be in a position to threaten and intimidate the purchasing public. In this way the business of petitioner would be seriously and permanently damaged; its sales of 'electro' steel would necessarily fall off, and the purchasing public would be at a loss how to identify or designate the steel manufactured in the electric furnace, without circumlocution, if they wished to purchase such steel from other than registrants, and the trade and business of petitioner would be seriously injured were the registrants to be allowed to retain their registration of the word 'electro.'" (Italics ours.)

The court further said:

"* * * It is contended that the petitioner fails to show that it has ever affixed on its goods the word 'electro' as a trademark or as a description of the goods, and has had, consequently, no such use of the word as would give it standing in this proceeding.

"It is quite true that to have a right to cancel or oppose the registration of a trademark is dependent upon a showing of interest. McIlhenny Sons Co. v. New Iberia Tobasco Pepper Co., 30 App. D. C. 337, 339 [133 O. G. 995; 1908 C. D. 325].

"It is not essential in all cases, however, that there should have been a strictly trademark use of the words by complainant. Injury to its business might be otherwise shown. Natural Food Co. v. Williams, 30 App. D. C. 348, 350 [133 O. G. 232; 1908 C. D. 320.]"

Appellant in support of its contention that the petitioner should show that it used the term at the time of filing the petition relies upon McIlhenny's Sons Co. v. New Iberia Tobasco Pepper Co., 30 App. D. C. 337, which it styles "the leading case." We have no quarrel with the holding in the McIlhenny Case. In that case we find the following, which is quoted in appellant's brief:

"The right of the petitioner to intervene was dependent upon a showing of interest. The statute does not contemplate that anyone may petition the Commissioner to cancel a trade-mark regularly registered, but it does provide that anyone who 'shall deem himself injured' may do so. The petition, therefore, must contain a statement of fact on this ju-risdictional question, sufficiently full to show that the petitioner has been injured by the registry of the mark he seeks to have canceled; and this fact must not be left to conjecture, but must affirmatively appear.
* * *

"The petition of the appellee does not contain an averment that it had used the word 'Tobasco' as a trademark for pepper sauce. The averment that it had used the word as a trademark is not sufficient, for the obvious reason that, unless the word had been used in the same business as that in which it was used by appellant, no injury contemplated by the statute would have resulted and no right to intervene would have followed."

In the McIlhenny Case, supra, appellant was complaining about being damaged in the use of its trade-mark "Tobasco." It claimed to have used the word "Tobasco" as a trade-mark. Therefore, since the petitioner in that case claimed a trade-mark right, it was important to show facts to sustain such a right.

The commissioner's decision in this case has fully distinguished between the proof required in a case where the petitioner claims a trade-mark right, and the proof required in a case where the trade-mark is descriptive, and the petitioner seeks only to preserve its right to use same in a descriptive way, and his decision is sound.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

HATFIELD, Associate Judge (dissenting).

The majority opinion holds that, in a case of this character, although it is necessary that injury be established as of the date of the filing of the petition for cancellation, a petitioner need not establish that, at that time, he was using the registered mark, nor one similar thereto, in a trade-mark sense or otherwise, nor that he was prevented from so doing by the registration of which he complains. If that is so, then a petitioner is not required to show legal injury. On the contrary, it is sufficient if he allege and prove that he thinks, or possibly imagines, that he has been, or may be, injured by the registration of an alleged trade-mark.

The doctrine upon which the court bases its decision is not only in defiance of the plain mandates of the statute—section 16 of the Trade-Mark Act of February 20, 1905, 15 USCA section 96, and this is a purely stat-

utory action—but it is contrary to established procedure in all legal and equitable actions. It is never a matter of mere formality, which a court may waive in its discretion, to require a party to a suit, either *in law* or *in equity,* to establish facts essential to his right to relief. Of course, in a case where it is obvious, as in the case at bar, that a registered trade-mark is descriptive, the decision can do no harm. However, in close cases, and in those where the marks are obviously not descriptive, an owner of a registered trade-mark may be harassed by petitions for the cancellation of trade-mark registrations.

In the instant case the petitioner failed to show any legal or other interest in the registered trade-mark, but was content to submit the case upon the testimony of its attorney of record, who apparently had but little, if any, knowledge of the issues raised by the petition for cancellation.

I have read the record with care, and, although it is alleged in appellee's petition for cancellation that it had continuously used the word "Ensemble" to describe its goods since the year 1924 to the date of filing its application, in my opinion, there is absolutely no evidence, nor any admission by appellant, to establish that appellee was using the registered mark in a descriptive sense or otherwise at the time it filed its application.

It is argued by counsel for appellee, and agreed to by the majority of the court, that appellant is estopped to deny that appellee was using the registered mark at the time it filed its application, because of the suit commenced by appellant in the United States District Court, on or about October 6, 1926, and withdrawn by appellant on October 7, 1927, about three and one-half months prior to the filing of appellee's application for cancellation.

It is sufficient to say in this connection that appellee's application for cancellation was filed more than two years after appellant filed his bill of complaint in the District Court, and that, although it may be presumed that appellee was using the mark at the time the suit was instituted, there is nothing in the record to show that it used the registered mark at any time thereafter.

Only four of the cases cited in the majority opinion appear to have any bearing on the issues in this case.

In the Andrews Radio Co. Case, the Commissioner of Patents held that it was sufficient for a petitioner for cancellation of a registered descriptive mark to establish that he had used the mark, the time of such use apparently being immaterial.

In the case of Elishewitz v. Leyser Green Co., 47 App. D. C. 193, 8 T. M. R. 34, the court affirmed the decision of the Commissioner of Patents holding that the registered trade-mark "Leghornette" for use on hats was descriptive. In his decision, the commissioner, among other things, said: "The petitioner for cancelation shows injury by the registration, though injury will be presumed to follow the improper registration of any descriptive word." No authorities were cited in support of the commissioner's holding, nor was the matter discussed in his opinion. The Court of Appeals gave no expression of approval of the quoted language, but concurred in the proposition that the registered mark was descriptive. The question now before us was apparently not considered by the Court of Appeals. In any event, it was not discussed in the court's decision.

In the case of Electro Steel Co. v. Lindenberg Steel Co., 43 App. D. C. 270, 5 T. M. R. 295, referred to in the majority opinion as the "case most analogous to the case at bar" the Court of Appeals held that it was not necessary to establish on the trial in a trade-mark cancellation proceeding, involving a descriptive mark, that the petitioner had *"ever affixed on its goods* the word 'Electro' as a trademark or as a description of the goods," and that it was "not essential in all cases" that "there should have been a strictly trademark use of the words by complainant," but that "Injury to its business might be otherwise shown." (Italics mine.) The court cited the case of Natural Food Co. v. Williams, 30 App. D. C. 348, in support of its holding.

The court was obviously right. In such cases it is necessary only that the petitioner show that he was using the registered mark in a descriptive sense in *connection with* his goods. It is not necessary that he show a strictly trade-mark use or that the mark was *affixed to his goods.*

In the case of McIlhenny's Son v. New Iberia Extract of Tobasco Pepper Co., Limited, 30 App. D. C. 337, the Court of Appeals of the District of Columbia held that the right of a party to petition for the cancellation of a registered trade-mark was dependent upon a showing of interest, and that he must allege in his petition, and establish by competent evidence on the trial, sufficient

facts "on this jurisdictional question" to show that he has "been injured by registry of the mark he seeks to have canceled." It is true that the court there said: "The petition of the appellee does not contain an averment *that it had used* the word 'Tobasco' as a trademark for pepper sauce." (Italics ours.)

In the case at bar, the commissioner construed the decision in the McIlhenny's Son Case to mean that, if it is alleged in a petition for cancellation and established on the trial that the petitioner had used the registered mark at any time, the statutory requirements have been complied with, and he is not required to allege and establish use of the registered mark at the time of the filing of his petition.

As I understand the decision in that case, the court held that, unless a petitioner for cancellation of a registered trade-mark alleged in his petition and established on the trial that he had used the registered mark on goods of the same descriptive properties, and had an interest in the mark not common to the general public, the tribunals of the Patent Office had no authority to cancel the registration. If the decision in that case was sound, and I have no doubt that it was, a petitioner for cancellation must, in order to show an interest in the registered mark not common to the general public, allege in his petition, and establish by competent evidence on the trial, that he was using the registered mark, or one confusingly similar thereto, on, or, under some circumstances, in connection with, goods of the same descriptive properties as those covered by the registration, at the time of the filing of his petition. In no other way could he show an interest in the mark not common to the general public or establish that he was "injured" within the statutory meaning of that term.

It is true that this court, in the case of Skookum Packers' Ass'n v. Pacific Northwest Canning Co., 45 F.(2d) 912, 18 C. C. P. A. ——, held, in accordance with the decisions of this court in cases therein cited, that, in an *opposition proceeding,* the Patent Office tribunals had authority to dispose of any question relating to the proposed registration that might properly be considered in an ex parte case.

That decision was based upon the mandates of section 7 of the Trade-Mark Act of February 20, 1905, 15 USCA § 87, which provides, in part, that the Commissioner of Patents "* * * shall direct the examiner in charge of interferences to determine the *question of the right of registration to such*

*trade-mark,* and of the sufficiency of objections to registration. * * *" (Italics ours.)

Section 7, however, has no application to cases involving the cancellation of registered trade-marks.

Section 13 of that act (15 USCA § 93) reads as follows: "Sec. 13. That whenever any person shall deem himself injured by the registration of a trade-mark in the Patent Office he may at any time apply to the Commissioner of Patents to cancel the registration thereof. The commissioner shall refer such application to the examiner in charge of interferences, who is empowered to hear and determine this question and who shall give notice thereof to the registrant. If it appear after a hearing before the examiner that the registrant was not entitled to the use of the mark at the date of his application for registration thereof, or that the mark is not used by the registrant, or has been abandoned, and the examiner shall so decide, the commissioner shall cancel the registration. Appeal may be taken to the commissioner in person from the decision of examiner of interferences."

It will be observed that section 13 provides that, whenever a person deems himself injured, he may at any time apply to the commissioner to cancel a registered trademark; and that the commissioner shall refer the application to the Examiner of Interferences *"who is empowered to hear and determine this question."* (Italics ours.) Obviously, the first question to be decided is the question of injury to the petitioner by virtue of the registration of a trade-mark.

Furthermore, section 16 of that act (15 USCA § 96) provides that "the registration of a trade-mark under the provisions of this act shall be prima facie evidence of ownership." Accordingly, the registration of a trade-mark descriptive or otherwise, is prima facie evidence of ownership, and, in a proceeding to cancel the registered mark, the statutory authority of the Patent Office tribunals is, in my opinion, limited to the disposition of issues properly raised inter partes.

In the case at bar, appellee properly alleged in its petition that it was using the registered mark at the time it filed its application. This allegation was denied in appellant's answer and, as no evidence was submitted to substantiate the truth of that allegation, there was nothing under the law for the Patent Office tribunals to do but to refuse to cancel the registered mark.

For the reasons stated, I am of opinion that the decision of the Commissioner of Patents should be reversed.

LENROOT, Associate Judge, concurs in the above dissent.